IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FABIAN HERNAN HERNANDEZ,<br><br>Defendant. | 2:24-CR-00044-Z-BR-(1) |

**MEMORANDUM OPINION AND ORDER**

Defendant Fabian Hernan Hernandez ("Defendant" or "Hernandez") is charged in a two-count indictment with (1) Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846; and (2) Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). ECF No. 19. Defendant moves to suppress all evidence seized by law enforcement during a search of 1942 South Marrs in Amarillo, Texas, conducted pursuant to a search warrant. ECF No. 31. For the reasons stated below, the Court **DENIES** the motion.

Because neither party requested a hearing on the pending Motion to Suppress ("Motion") and because the sole issues in Defendant's Motion are issues of *law*, not of fact, the Court, in its discretion, declines to hold a hearing on Defendant's Motion and the Government's Response.[1] *See* ECF Nos. 31, 37.

---

[1] *See United States v. Harrellson*, 705 F.2d 733, 737 (5th Cir. 1983) (holding evidentiary hearings are only required on a Motion to Suppress where necessary to receive an issue of fact). Here the sole issue before the Court is whether the search warrant affidavit in question is "so lacking in indicia of probable cause" as to qualify as "bare bones." As such, the Court relied solely on the information contained in the four corners of the search warrant and search warrant affidavit in deciding Defendant's Motion to Suppress.

**BACKGROUND**

In 2022, Task Force Officer Kerry Blackerby ("TFO Blackerby") began a Drug Enforcement Administration ("DEA") investigation of Defendant for large-scale methamphetamine trafficking in the Amarillo division. ECF No. 31-1 at 2. Homeland Securities Investigations ("HSI") simultaneously began investigating Defendant's drug trafficking activities. *Id.* HSI informed TFO Blackerby that it had received information that Defendant was trafficking drugs from his place of business, High Rollerz, located in Amarillo, TX. *Id.* Defendant then closed his business in 2022. *Id.*

While investigating Defendant's activities, TFO Blackerby discovered that Defendant had a previous federal conviction for drug distribution and had posted a picture on his Facebook page in which he wore a Santa Muerte necklace, a symbol frequently used by high-level distributors of narcotics affiliated with foreign drug cartels. ECF No. 31-1 at 2.

In 2024, a confidential informant ("CI") contacted TFO Blackerby to inform him that the CI had been inside Defendant's residence at 1942 South Marrs on "numerous occasions" over the last few months and "routinely observed" Defendant in possession of "distributable amounts of Methamphetamine." ECF No. 31-1 at 2–3. The CI stated that he observed one-half to one pound of methamphetamine "almost every other day" during his visits to Defendant's residence. ECF No. 31-1 at 3. In May 2024, the CI informed TFO Blackerby that he had observed at least one pound of methamphetamine at Defendant's residence within the last ten days. ECF No. 31-1 at 3.

TFO Blackerby then applied for a warrant to search for evidence of methamphetamine trafficking at 1942 South Marrs in Amarillo, Texas. ECF No. 31-1 at 3–4. In support of an application for the warrant, TFO Blackerby provided an affidavit containing, in part, the following information:

> Within the last 48 hours the confidential informant was at the suspected place and was informed by the suspected party that the suspected party would be in possession of distribution amounts of methamphetamine if the confidential informant needed to purchase any. The suspected party told the confidential informant that if they needed to purchase methamphetamine, to come to the suspected place to pick the methamphetamine up and the suspected party would have them ready. The confidential informant knows that the substance is Methamphetamine because the confidential informant has purchased and used Methamphetamine in the past. The confidential informant has provided information to the affiant and other law enforcement partners about narcotics traffickers in the past and through investigations, the affiant, and the affiant's partners, was able to establish the information has been proven to be reliable, true and correct. The confidential informant has been told by the affiant and other narcotic agents and the confidential informant is aware that possession of Methamphetamine is a violation of the Texas Health and Safety Code.

*Id.* at 3.

The affidavit also described TFO Blackerby's education, experience, and training. *Id.* at 1–2. TFO Blackerby has served for twenty-two years as a Randall County Sheriff's Deputy. *Id.* For the past several years, he has also concurrently served as a TFO with the DEA. *Id.* TFO Blackerby also completed training in criminal investigations and drug offenses through the Randall County Sheriff's Office, the Amarillo Police Department, Midwest Counter Drug Training Center, the Texas Narcotics Officers Association, the DEA, and several other organizations. *Id.* He has "been involved with numerous criminal investigations including multiple organized crime cases, and multiple narcotics cases ranging from street level user to cartel large-scale distributors." *Id.* at 2.

Upon review of the affidavit, Judge Dee Johnson issued a search warrant for 1942 South Marrs. *See id.* at 4. During the search, law enforcement found Defendant inside the residence. ECF No. 1 at 2. Officers located a Ruger .22 rifle, approximately 1.1 kilograms of methamphetamine, and $7,600.00 in cash. *Id.*

The Government subsequently charged the Defendant with two counts: (1) Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846; and (2) Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). ECF No. 19.

**STANDARDS**

Where a Defendant challenges a search warrant for lack of probable cause, the Court applies a two-step test. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003). First, the Court determines whether the good-faith exception to the exclusionary rule, announced in *United States v. Leon*, 468 U.S. 897, 919–20 (1984), applies. *Payne*, 341 F.3d at 399. Under the good-faith exception, evidence obtained during a search pursuant to a legally-deficient warrant is admissible, "so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *Id.* "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). Second, if the good-faith exception applies, the Court "need not reach the question of probable cause for the warrant unless it presents a 'novel question of law,' resolution of which is 'necessary to guide future action by law enforcement officers and magistrates.'" *Payne*, 341 F.3d at 399. But, if the good-faith exception does not apply, the Court must then determine whether "the magistrate had a substantial basis for . . . concluding that probable cause existed." *See United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129–30 (5th Cir. 1997) (internal citations omitted).

The good-faith exception does not apply where: (1) the affiant recklessly disregarded the truth and misled the magistrate or judge with false information; (2) the issuing judge or magistrate "wholly abandoned" his judicial role; (3) the warrant is based on an affidavit "so lacking in indicia

of probable cause as to render belief in its existence entirely unreasonable;" and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or things to be seized the executing officers cannot reasonably presume it to be valid. *Payne*, 341 F.3d at 399–400 (citing *United States v. Webster*, 960 F.2d 1301, 1307 n. 4 (5th Cir. 1992)).

A district court's review of the sufficiency of an affidavit should pay "great deference" to the magistrate's decision. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). A "grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant," and "courts should not invalidate warrants by interpreting affidavits in a hyper-technical, rather than a commonsense manner." *Id.* (internal citations omitted).

ANALYSIS

Here, in considering the totality of the circumstances, the Court **FINDS** that the affidavit was not "bare bones," and the good-faith exception thus applies in this case. The affidavit sets forth sufficient *specific* details about the CI's presence at 1942 South Marrs to survive the "bare bones" analysis under binding Fifth Circuit precedent. It also provides sufficient detail regarding the CI's veracity and reliability for the magistrate to have found probable cause. The executing Task Force Officers, therefore, had an objectively reasonable basis to believe in the validity of the warrant.

But even if the good-faith exception does not apply, the affidavit is still supported by sufficient indicia of probable cause for this Court to uphold the warrant. Here, the affidavit sets forth sufficient facts to support the magistrate's finding of a fair probability that contraband or evidence would be found at 1942 South Marrs.

### A. The good-faith exception applies because the warrant was not obtained with a "bare-bones" affidavit.

The good-faith exception applies "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Brown*, 567 Fed. Appx 272, 281 (5th Cir. 2014) (quoting *Leon*, 468 U.S. at 920). "[E]vidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *Brown*, 567 Fed. Appx at 281 (quoting *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997)).

The exception does not apply when law enforcement obtains a warrant with a "bare bones" affidavit, meaning one containing "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992) (internal citations omitted). "[E]xamples of 'bare bones' affidavits include those that merely state that the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe' that contraband is located on the premises." *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006). An affidavit need not contain direct evidence of criminal activity to support a finding of probable cause. Rather, a magistrate may make reasonable inferences and draw common sense conclusions from an affidavit.[2] "In determining the sufficiency of an affidavit, the Court must examine the totality of the circumstances, including the (1) *veracity*, (2) *reliability*, and (3) *basis of knowledge* of a confidential informant." *See United States v. Fisher*, 22 F.3d 574, 578 (5th Cir.

---

[2] *See Brown*, 941 F.2d at 1303 (holding a magistrate "could have reasonably inferred" that criminal activity was occurring from information in an affidavit); *see also United States v. Wylie*, 919 F.2d 969, 975 (5th Cir. 1990) (stating that a magistrate "might reasonably have drawn such [a] common sense conclusion" from an affidavit lacking direct evidence of narcotic sales at a residence).

1994) (emphasis added). This "totality of the circumstances" approach to probable cause does not require that all tips be corroborated by subsequent police investigation to be considered credible. *See United States v. Blount*, 123 F.3d 831, 836 (5th Cir. 1997).

Defendant argues that the good-faith exception is inapplicable because the affidavit is a "bare bones" affidavit that "lacks all indicia of reliability." ECF No. 31 at 9. Specifically, Defendant argues that the affidavit failed to specify sufficient facts, especially facts establishing that Defendant would possess methamphetamine on the date of the search. *Id.* at 11. Defendant further argues that there "was no allegation [in the affidavit], whatsoever, of any independent verification [of the CI's statements]" by law enforcement and that the affidavit failed to allege sufficient facts to indicate that the CI was a credible source upon whom the magistrate could rely on to find probable cause to issue the warrant. *Id.* at 10–11.

Here, the affidavit is not so conclusory or lacking in indicia of probable cause to qualify as "bare bones." First, the affidavit sets forth sufficient specific details about the CI's presence and first-hand observation of drugs at 1942 South Marrs. The affidavit alleges that Defendant was "in charge of" or "controlled" the 1942 South Marrs residence. ECF No. 31-1 at 1. *See Satterwhite*, 980 F.2d at 321 (affidavit was not "bare bones" where it alleged that the defendant *controlled* the premises). The affidavit also included a description and photograph of the residence. ECF No. 31-1 at 1, 8. The CI also told TFO Blackerby that he observed Defendant at the residence in possession of distributable amounts of methamphetamine numerous times within ten days of the date the search warrant was issued. ECF No. 31-1 at 2. *See United States v. Cutwright*, 247 F. Appx 499, 501 (5th Cir. 2007) (affidavit was not "bare bones" where CI observed possession and sale of bagged cocaine); *McKnight*, 953 F.2d at 904–05 (affidavit was not "bare bones" where CI personally observed methamphetamine inside the defendant's residence). Furthermore, the CI

confirmed that he was in Defendant's residence within forty-eight hours of the search warrant, and Defendant stated that he would have methamphetamine at the residence on the date of the search warrant. ECF No. 31-1 at 3. See *Satterwhite*, 980 F.2d at 321 (affidavit was not bare bones although it partially relied on hearsay because the affidavit presented a 'substantial basis for crediting the hearsay'"). The CI further averred that the substance was methamphetamine because he had both "purchased and used Methamphetamine in the past." ECF No. 31-1 at 3. *See Satterwhite*, 980 F.2d at 321 (affidavit based on allegations of CI upheld where CI recognized cocaine based on CI's previous cocaine possession and use); *Gallegos*, 239 F. Appx at 894 (same). For the purpose of the good-faith exception, the allegation that (1) Defendant controlled the premises, (2) the CI observed Defendant on numerous occasions with distributable amounts of methamphetamine at the residence within the last ten days, (3) Defendant informed the CI that he would have methamphetamine on the day of the search and (4) the CI recognized the methamphetamine because the CI had previously possessed and used methamphetamine are sufficient facts "from which a magistrate can independently determine probable cause." *Satterwhite*, 980 F.2d at 321.

Second, the affidavit does not lack probable cause simply because it predominately relies on the statements of a confidential informant without additional corroboration by law enforcement. The affidavit provides sufficient detail regarding the CI's veracity and reliability for the magistrate to find probable cause. When there are no "specific reasons for police to doubt his . . . truthfulness, an ordinary citizen, who provides information to police . . . during an ongoing investigation, may be presumed credible without subsequent corroboration." *Blount*, 123 F.3d at 835; *see also McKnight*, 953 F.2d at 905 ("The Constable's assertion that the confidential informant was 'reliable' and had 'furnished him with information in the past that has proved to be reliable and true' provided the magistrate with sufficient indicia of the reliability and veracity of

the informant's tip."). Whether subsequent corroboration is necessary "must be determined in the light of the totality of the circumstances presented by the particular set of facts." *Id.* at 836.

Here, law enforcement had no reason to doubt the CI's credibility or the truthfulness of the CI's statements. The affidavit alleged that the CI had "provided information to the affiant and other law enforcement partners about narcotics traffickers in the past" which the affiant had been able to establish was "reliable, true and correct." ECF No. 31-1 at 3. *See Satterwhite*, 980 F.2d at 321 (finding the CI trustworthy where the affidavit alleged that the CI had assisted law enforcement reliably in the past); *McKaskle*, 731 F.2d at 1200 (same). Furthermore, the CI made an inculpatory statement against interest when he admitted past methamphetamine use. ECF No. 31-1 at 3 (CI admitted that he "purchased and used Methamphetamine in the past."). And "[a]dmissions of crime carry their own indicia of reliability – sufficient at least to support a finding of probable cause to search." *United States v. Harris*, 403 U.S. 573, 583 (1971). Additionally, law enforcement had been investigating Defendant for several years and had received other tips that Defendant was trafficking methamphetamine. ECF No. 31-1 at 2. For purposes of the good-faith exception, this information is sufficient to establish the informant's "basis of knowledge" that there was methamphetamine in the residence. *See McKnight*, 953 F.2d at 905 (holding affiant's assertion that informant's presence at the defendant's house and observations therein provided information by which a magistrate could judge whether informant had sufficient basis of knowledge).

Taken together, the information in TFO Blackerby's affidavit exceeds mere conclusory statements. The affidavit provides sufficient evidence for a magistrate to make reasonable inferences and draw common sense conclusions regarding criminal activity at 1942 South Marrs. When combined with TFO Blackerby's statement about his experience as a DEA Task Force

Officer and his extensive training,[3] it was objectively reasonable for the executing officers to believe in the validity of the warrant issued by the judge. Consequently, the Court **FINDS** that the good-faith exception applies and Defendant's Motion to Suppress should be **DENIED**.

### B. Even if the Good-Faith Exception does not apply, the warrant was supported by sufficient indicia of probable cause.

Even if the good-faith exception did not apply, the warrant is still valid because it is supported by probable cause. Probable cause requires a "reasonable ground for belief" that a crime has been committed and evidence of such crime would be found at the suspected place; or there is a reasonable expectation contraband would be found at the suspected place. *See Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) (quoting *Gates*, 462 U.S. at 249) ("Probable cause exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime."); *Carroll v. United States*, 267 U.S. 132, 149 (1925) (explaining that "the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported.").

The magistrate must have a "substantial basis for . . . concluding that probable cause existed." *Pena-Rodriguez*, 110 F.3d at 1129–30. To have a "substantial basis" in determining probable cause, the magistrate judge must decide "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Allen*, 625 F.3d 830, 840 (5th Cir 2010). And the reviewing courts "will pay substantial deference to [magistrates'] determinations of probable cause . . . ." *Aguilar v. Texas*, 378 U.S. 108, 111 (1964); *see also United States v. Morton*, 984 F.3d 421, 430

---

[3] As described earlier, TFO Blackerby has twenty-two years of experience with the Randall County Sheriff's Office, several years of experience as a TFO with the DEA and has received extensive drug interdiction training through the Randall County Sheriff's Office, the DEA, and several other organizations. ECF No. 31-1 at 2–3.

(5th Cir. 2021) (explaining that a "[magistrate judge's] determination of probable cause is entitled to great deference by the reviewing court . . . .").

Here, the affidavit presents more than a substantial basis for the judge to conclude that the residence would contain evidence of methamphetamine trafficking. The CI was personally present inside the 1942 South Marrs residence and observed Defendant in possession of methamphetamine on multiple occasions. ECF No. 31-1 at 3. The CI also identified the amount of methamphetamine observed as a "distributable amount" between one-half to one pound. *Id.* The CI further stated he could confidently identify the substance as methamphetamine because of previous personal methamphetamine possession and use. *Id.* Given the information in the affidavit, the magistrate judge could conclude that there is a "fair probability that contraband or evidence" would be found at the 1942 South Marrs residence. TFO Blackerby's affidavit further notes that the CI was inside the residence within 48 hours of the issuance of the search warrant and had been informed that Defendant would possess methamphetamine on the day of the search. *Id.* Based on the CI's reliable information and excellent track record of providing effective and accurate information to law enforcement, a magistrate had a substantial basis in determining probable cause. Thus, this affidavit is not so "lacking in indicia of probable cause as to render belief in its existence entirely unreasonable." *Payne*, 341 F.3d at 399–400 (citing *Webster*, 960 F.2d at 1307 n. 4). Accordingly, the Court **FINDS** that the affidavit was supported by probable cause, which serves as an independent basis to **DENY** Defendant's Motion.

### CONCLUSION

For the reasons discussed above and the Fifth Circuit jurisprudence cited, Defendant's Motion to Suppress is **DENIED**.

**SO ORDERED.**

September 25, 2024.

_____
MATTHEW KACSMARYK
UNITED STATES DISTRICT JUDGE